UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| AROOSTOOK BAND OF MICMACS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PATRICIA E. RYAN, *et als.*, )<br>)<br>Defendants. ) | Civil No. 03-24-B-K |

## MEMORANDUM OF DECISION[1]

This order disposes of the final two counts of the amended complaint that have not already received dispositive treatment on appeal before the Court of Appeals and enters a final judgment with respect to all claims.  See Aroostook Band of Micmacs v. Ayoob, 484 F.3d 41 (1st Cir. 2007) (reversing the entry of judgment for the Band on counts I and III and the entry of injunctive relief against the Maine Human Rights Commission, separately holding that the Band does not have sovereign immunity, and agreeing only that the Aroostook Band is exempt from Title VII)[2]; Aroostook Band of Micmacs v. Ryan, 404 F.3d 48 (1st Cir. 2005) (reversing the dismissal of Counts I, II, III, and IV for lack of subject matter jurisdiction, vacating the dismissal of Count V, and remanding for further proceedings consistent with the opinion).  As concerns the unresolved claims, summary judgment will enter for the defendants on count IV; the supplemental state law claim asserted in count V is dismissed without prejudice.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

[2] O*verruled in part by* Narragansett Indian Tribe v. Rhode Island, 449 F.3d 16, 24-25 (1st Cir. 2006) (en banc).

**Background**

The cross motions for summary judgment filed by the Aroostook Band of Micmacs (Docket No. 41) and the defendants (Docket Nos. 36 & 40) are back in front of me after the First Circuit Court of Appeals concluded that I erred for a second time in my attempts to resolve the now longstanding dispute between the State of Maine and the Aroostook Band of Micmacs regarding the reach of Maine law as it pertains to employment discrimination suits brought against the Band. This action was brought by the Band against three former Band employees, Lisa Gardiner, Tammy Condon, and Beverly Ayoob, as well as against Patricia Ryan, the executive director of the Maine Human Rights Commission, and members of the Maine Human Rights Commission. The Commission defendants, who have up until now pulled the laboring oar for all the defendants, are charged with vetting the employee claims of discrimination, a process that is a prerequisite to the filing of a civil action having a claim under the Maine Human Rights Act and/or the Maine Whistleblower Protection Act.

There are two pair of federal and state statutory schemes at issue in this dispute: the 1980 federal Maine Indian Claims Settlement Act (MICSA), which ratified the Maine Implementing Act (MIA), state legislation that worked settlements among the Penobscot Nation, the Passamaquoddy Tribe, The Houlton Band of Maliseet Indians, and the State of Maine, and the 1991 federal Aroostook Band of Micmacs Settlement Act (ABMSA) which followed in the wake of the 1989 state Micmac Settlement Act (MMSA).

In the original cross motions for summary judgment (Docket Nos. 36, 40 & 41) the parties disputed whether or not the terms of the MMSA, which clearly made the Band subject to state law, could be given any effect. As its central thesis the Band asserted that, no matter how the court slices these federal and state legislative enactments, the Band prevails because one rule,

stemming from the federal common law of Indian self-government, must apply: State employment laws—in this case the Maine Human Rights Act (MHRA) and the Maine Whistleblower's Protection Act (MWPA)[3]—do not apply to tribal government employment. The Band's central thesis has now been rejected by the First Circuit Court of Appeals and we return to this court to address the remaining question of federal preemption involving Title VII and Maine employment discrimination law and a purely state law question regarding the meaning of certain state statutory language.

## Discussion

The Aroostook Band of Micmacs contends that it is not subject to regulatory oversight by the Maine Human Rights Commission or to civil suits brought against the Band by Maine citizens under the Maine Human Rights Act (MHRA) and the Maine Whistleblower Protection Act (MWPA). The Band's various immunity arguments in support of this proposition were rejected by the Court of Appeals in <u>Aroostook Band of Micmacs v. Ayoob</u>, 484 F.3d 41 (1st Cir. 2007). The Band has two remaining arguments. The first, asserted in the fourth count of the Band's amended complaint, is that Title VII, which exempts Indian tribes from its coverage, preempts the MHRA and the MWPA and precludes the State of Maine from regulating the Band where Congress has chosen not to. (Pl.'s Mot. for Summ. J. at 28-35, Doc. No. 41; Pl.'s Supp. Brief at 1-3, Doc. No. 140; Am. Compl. ¶¶ 81-88, Doc. No. 28.) The second argument, asserted in the fifth count, is that neither the MHRA nor the MWPA can be construed to include the Band within their respective definitions of "employer," because the Band cannot be regarded as a "person" under Maine law. (Pl.'s Mot. for Summ. J. at 9-19; Am. Compl. ¶¶ 89-93.) Of these two remaining claims, only count IV presents a federal question.

---

[3] MWPA claims are made actionable through the MHRA. For the sake of simplicity I refer at times to these laws as Maine employment discrimination laws.

3

A.      **Count IV**

Title VII of the Civil Rights Act of 1964 prohibits, among other things, discrimination in employment based on sex, race and other protected categories. However, in its definition of employers subject to the Act, Title VII indicates that the term employer does not include an Indian tribe. 42 U.S.C. § 2000e(b)(1). The exemption for Indian tribes has been explained as arising from the fact that Indian tribes are sovereign entities for purposes of internal tribal matters such as tribal employment. The exemption "reveals a clear congressional recognition, within the framework of Title VII, of the unique legal status of tribal and reservation-based activities." Morton v. Mancari, 417 U.S. 535, 545-46 (1974). Thus, for example, the exemption prevents a tribe from being liable under federal law for the preferential hiring of tribal members or other members of the Indian community. Id.; see also 110 Cong. Rec. 12723 (1964) ("This exemption is consistent with the Federal Government's policy of encouraging Indian employment and with the special legal position of Indians."); 110 Cong. Rec. 13702 (1964) ("This amendment would provide to American Indian tribes in their capacity as a political entity, the same privileges accorded to the U.S. Government and its political subdivisions, to conduct their own affairs and economic activities without consideration of the provisions of the bill."). Nevertheless, the mere fact that Congress chose not to regulate Indian tribes under Title VII does not mean that it sought to preclude the states from regulating tribal employment matters. Preemption arises only under specific circumstances.

> Under the Supremacy Clause of Article VI of the United States Constitution, federal law may preempt state law in a variety of ways. When acting within constitutional limits, Congress may preempt state law by so stating in express terms. Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977). Absent express language, preemption may be implied where federal legislation is so comprehensive as to leave no room for supplemental legislation. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). Even where Congress has not completely displaced state regulation, state law may be preempted to the extent

> that it actually conflicts with federal law. Such a conflict occurs either because compliance with both is physically impossible, or because state law stands as an obstacle to the accomplishment of the full objectives of Congress.

Assoc. Indus. of Mass. v. Snow, 898 F.2d 274, 278 (1st Cir. 1990). The Band does not argue that express preemption applies here. Nor does it contend that Title VII was meant by Congress to be so comprehensive as to leave no room for supplementation by the states. (Mot. Summ. J. at 31-34, Doc. No. 41.) Instead, the Band argues that allowing the State of Maine to regulate its employment practices would directly conflict with the Congressional determination that Indian tribes be exempt due to their special "political" or sovereign status and so they can be free to engage in the preferential employment of Indians. I am not persuaded by this argument.

The Band is made subject to Maine law pursuant to the state and federal settlement acts that resulted in the formal recognition of the Penobscot Nation, the Passamaquoddy Tribe and the Houlton Band of Maliseet Indians. Thus, the federal Maine Indian Claims Settlement Act ("MICSA"), passed in 1980, states that

> all Indian[] . . . tribes or bands of Indians in the State of Maine, other than the Passamaquoddy Tribe [and] the Penobscot Nation, . . . shall be subject to the civil and criminal jurisdiction of the State [and] the laws of the State . . . to the same extent as any other person . . . therein.

25 U.S.C. § 1725(a). Subsequently, the State of Maine agreed with the Band to formally recognize them in the Micmac Act, passed in 1989, and certain irregularities arose with respect to congressional ratification of the Micmac Act. Nevertheless, the earlier settlement acts, according to the Court of Appeals, vitiated any claim of inherent tribal authority for the Band, including any claim to exclusive authority over internal tribal matters. Aroostook Band, 484 F.3d at 50.

Finding a conflict between Title VII and the Maine Human Rights Act, at least as it concerns Maine Indian tribes, is a difficult proposition given the kind of recognition that

5

Congress and the State of Maine have given to the Aroostook Band. Even if the legislative history concerning the reason for the Indian tribe exemption in Title VII were essential to Congress's "full objectives" when it passed the Civil Rights Act of 1964, the Micmacs have only limited political status, not the full tribal sovereignty that other Indian tribes enjoy. Moreover, with MICSA, Congress expressly stated that all Maine Indian tribes are subject to Maine law with limited exceptions not relevant to this discussion. The Aroostook Band is expressly made subject to Maine law to the same extent as "any other person" therein. 25 U.S.C. § 1725(a); see also 30 M.R.S. §§ 6204, 6206(1).

> Preemption questions ultimately turn on congressional intent, and the primary indicator of that intent is the text of the congressional act claimed to have preemptive effect. But "[t]he text of the preemption provision must be viewed in context, with proper attention paid to the history, structure, and purpose of the legislative scheme in which it appears." Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 591 (2001).

Good v. Altria Group, Inc., ___ F.3d ___, 2007 WL 2460039, *4, 2007 U.S. App. LEXIS 21088, *12 (1st Cir. 2007) (citations omitted). The exemption of Indian tribes under Title VII reflects a limited intention by Congress to exempt Indian tribes from Title VII coverage for the pragmatic purpose of avoiding a regulatory regime that might impinge upon an Indian tribe's ability to preferentially employ Indians. However pragmatic this exemption may be, at least as concerns preferential employment based on Indian ancestry, the exemption is cabined in a definitional provision of Title VII and there is no reasonable basis to infer a purpose that is more expansive than what is stated, i.e., exempting Indian tribes from coverage under Title VII alone. Treating the exemption as a prohibition on state regulation of tribal employment matters would not only blow the exemption entirely out of proportion, but would also disregard the simple fact that Congress quite pointedly addresses the relative balance between state and tribal authority in its various Indian claims settlement acts. These acts are obviously a more appropriate place to look

6

to divine congressional intent on the question at issue. Here, the appropriate settlement act is MICSA, which tells us that the Band is subject to Maine law just as any other person is. Finally, it has already been decided by one judge in this district that the Title VII exemption does not impact Maine law, so the recent treatment of MICSA by the Court of Appeals is just additional authority in support of existing precedent. See Shannon v. Houlton Band of Maliseet Indians, 54 F. Supp. 2d 35, 40-41 & n.11 (D. Me. 1999) ("readily" concluding "that the Title VII exemption does not affect state law" and addressing the impact of 25 U.S.C. § 1725(h)).

**B.      Count V**

With its fifth count, the Band argues that it is not subject to the MHRA or the MWPA because it is neither a "person" nor an "employer" within the meaning of either act. This argument presents a question of state law that is most appropriately addressed in the context of the underlying sex discrimination proceedings initiated by Defendants Lisa Gardiner and Tammy Condon before the Maine Human Rights Commission. See Ruiz-Sulsona v. Univ. of P.R., 334 F.3d 157, 160-61 (1st Cir. 2003) ("As a general rule, where the district court dismisses the federal claims before trial, the court should dismiss the state law claims without prejudice.").

**Conclusion**

For the reasons stated above, the Band's motion for summary judgment (Doc. No. 41) is DENIED on count IV. The motions for summary judgment filed by the executive director of the Maine Human Rights Commission (Doc. No. 36) and by Ms. Condon and Lisa Gardner (Doc. No. 40) are GRANTED with respect to count IV. I now direct the Clerk to enter judgment for the defendants on counts I, II and IV and judgment for the plaintiff on count III (asserting that the Band is exempt from Title VII). Count V is dismissed without prejudice.

*So Ordered.*

September 27, 2007 /s/ Margaret J. Kravchuk
U.S. Magistrate Judge